UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| WILLIE R. MEADS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 13-228-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| LEXINGTON-FAYETTE URBAN | ) | |
| COUNTY GOVERNMENT, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

This matter is pending for consideration of *pro se* Plaintiff Willie R. Meads' and Defendant Lexington-Fayette Urban County Government's ("LFUCG") motions for summary judgment. [Record Nos. 42, 44] Meads alleges various claims resulting from his time as an employee and eventual termination from the LFUCG's Division of Waste Management. For the reasons outlined below, the Court will deny the plaintiff's motion for summary judgment and grant summary judgment in favor of the defendant regarding all claims.

## I.

Meads is African-American and was 58 years old at the time of filing his motion for summary judgment on October 9, 2014.[1] [Record No. 42, p. 9] He was employed by LFUCG from May 2012 through July 2012. During this employment, Meads worked as an

---

[1]     Meads does not state how old he was at the time of his employment with the defendant. The Court surmises that he was either 55 or 56 during that time.

Equipment Operator Senior in the Division of Waste Management.  One of his primary duties was operating a rear loader truck and other equipment.  At all times during his employment he was a probationary employee and employed on an at-will basis.[2]

Steve Feese, the Director of the Division of Waste Management, decided to terminate Meads on June 19, 2012.  [Record No. 44-8]  Thereafter, on June 21, 2012, Meads filed a dual discrimination charge with the Lexington-Fayette Urban County Human Rights Commission ("LFUCHRC") and the Equal Employment Opportunity Commission ("EEOC").  Meads alleged discrimination based on age, sex, and disability due to disparate treatment of terms and conditions of employment in training and evaluation.  [Record No. 44-2]  He was made aware of his impending employment termination on June 26, 2012.  [Record No. 42-2, p. 16]  Meads also filed a harassment complaint with the LFUCG's Division of Human Resources on June 28, 2012.  [*Id.*, p. 9–14]  The harassment complaint was denied the same day because it was determined that his allegations did not meet the definition of harassment.  [*Id.*, p. 15]

Meads' final day of work was July 3, 2012.  At that time, his charge of discrimination was still under investigation.  Subsequently, on October 8, 2012, the LFUCHRC determined that it was unable to conclude that a violation of the statutes had occurred relating to Meads' allegations of discrimination.  [Record No. 47-1] On May 29, 2013, the EEOC mailed Meads

---

2       Under Section 21-14 of the LFUCG Code of Ordinances, employees must serve a six-month probationary period before appointment to classified civil service.  The probationary period is used for the adjustment of new employees through supervision, counseling, and evaluation, as well as for the "elimination of any probationary employees who do not meet the required standards of work.  The appointing authority may terminate a probationary employee at any time during the probationary period without the right of a hearing before the commission."  [Record No. 44-7, p. 1]

- 2 -

a notice of right-to-sue as well as notification that it had adopted the LFUCHRC's determination. [Record No. 44-3]  Meads originally filed suit against the LFUCG in the Fayette County Circuit Court on June 27, 2013, asserting  claims of race discrimination, hostile work environment, retaliation, wrongful termination, and illegal conspiracy.  [Record No. 1-1, pp. 1, 3]  Meads' claims are based upon allegations of disparate treatment during training for his employment, verbal abuse, and improper reasons for his termination.  The case was removed to this Court on July 18, 2013.

On November 12, 2013, Meads amended his Complaint to add additional defendants and claims of age and sex discrimination.  [Record No. 14, p. 3]  On December 6, 2013, and December 12, 2013, the newly-added defendants moved to dismiss the claims against them for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  [Record Nos. 18, 20]  On December 31, 2013, the Court granted the motions to dismiss.  [Record No. 23]  Meads appealed this Court's decision to the United States Court of Appeals for the Sixth Circuit on January 9, 2014; however, his appeal was denied for lack of appellate jurisdiction. [Record Nos. 24, 31]  On June 11, 2014, the Court re-opened discovery for a period of ninety days.  [Record No. 37]  Thereafter, the parties moved for summary judgment.  [Record Nos. 42, 44]

## II.

Summary judgment is appropriate when there are no genuine disputes regarding any material facts and the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23; *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002).  A dispute over a material fact is not "genuine" unless a

reasonable jury could return a verdict for the nonmoving party. That is, the determination must be "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986); *see Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008). In deciding whether to grant summary judgment, the Court views all the facts and inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).[3]

### III.

Meads alleges multiple claims under Title VII of the Civil Rights Act of 1964, including race discrimination, retaliation, hostile work environment, and sex discrimination. He further alleges age discrimination and claims pursuant to 42 U.S.C. § 1981. Finally, he alleges state law claims of wrongful termination, illegal conspiracy, and claims arising under the Kentucky Civil Rights Act.[4] [Record No. 14]

### A. Title VII

Title VII is "an elaborate administrative procedure, implemented through the EEOC, that is designed to assist in the investigation of claims of . . . discrimination in the workplace, and to work towards the resolution of these claims through conciliation rather than

---

3    Meads has attached numerous affidavits to his motion. However, these affidavits do not indicate that they are made with personal knowledge, fail to show that the declarants are competent to testify on the matters stated, are filled with conclusory and speculative statements, and assert facts that would be inadmissible as hearsay. *See* FED. R. CIV. P. 56(c)(3). Thus, they will not be considered in resolving the pending motions.

4    Meads also alleges a claim of "sabotage." [Record No. 14, p. 3] However, the Court is unaware of a such a claim under federal or state law and the plaintiff fails to identify any support for such a claim.

- 4 -

litigation." *Patterson v. McLean Credit Union*, 491 U.S. 164, 180–81 (1989) (citing 42 U.S.C. § 2000e-5(b)). To bring a claim in federal court under Title VII, a plaintiff must satisfy two prerequisites: (1) timely file a charge of employment discrimination with the EEOC; and (2) act upon the EEOC's statutory notice of the right-to-sue. *Puckett v. Tenn. Eastman Co.*, 889 F.2d 1481, 1486 (6th Cir. 1989) (citing 42 U.S.C. § 2000e-5(f)(1)). The Sixth Circuit has determined that "if a plaintiff did not first present a claim to the [EEOC], that claim may not be brought before the federal courts on appeal." *Haithcock v. Frank*, 958 F.2d 671, 675 (6th Cir. 1992); *see Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010). However, because the Complaint in this case was filed by a *pro se* plaintiff, it is construed liberally so that the Court may consider claims that reasonably relate to or grow out of the allegations contained in the EEOC charge. *See Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006). Thus, "where facts related with respect to the charged claim would have prompted the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Davis v. Sodexho*, 157 F.3d 460, 463 (6th Cir. 1998).

### 1.    Race Discrimination

LFUCG asserts that the Meads' race discrimination claim is barred because he failed to exhaust administrative remedies. [Record No. 44-1, p. 4] As stated previously, on June 21, 2012, Meads filed a dual discrimination charge with the LFUCHRC and the EEOC in which he asserted discrimination on the basis of age, sex, and disability due to disparate treatment of terms and conditions of employment in training and evaluation. [Record No. 44-2] At the time of Meads' dismissal (i.e., July 3, 2012), his charge of discrimination was

- 5 -

still being investigated.  The LFUCHRC denied Meads' claims on October 8, 2012, and the EEOC adopted that decision on May 29, 2013.  [Record Nos. 44-3; 47-1]  Meads contends that his claim of race discrimination grows out of the allegations in his EEOC charge.  He further contends that he amended his claim to include a charge of racial discrimination in a document that he allegedly filed with the Kentucky Division of Unemployment Insurance as part of an unemployment compensation proceeding.  [Record Nos. 42-8, pp. 16–19; 46, pp. 2–3]

In this case, Meads did not allege a claim of race discrimination in his EEOC charge. The EEOC form checked the boxes only for discrimination based on age, sex, and disability and left blank the box for race.  It also cited no related facts which would have prompted the EEOC to consider or investigate possible race discrimination.   [Record No. 44-2] Additionally, there is no evidence that the document allegedly filed with the Kentucky Division of Unemployment Insurance was ever received by either the LFUCHRC or EEOC or that it constituted an amendment to Meads' EEOC charge.  This is supported by the August 31, 2012, report of the LFUCHRC's investigator in which it was determined that there was insufficient evidence to support Meads' allegations of "disparate treatment on the basis of age, sex, and/or perceived disability."  [Record No. 12-17, p. 4]  Additionally, the Commission's October 8, 2012, dismal found no basis for statutory violations based on "age, sex, and disability in regards to Meads' employment," without any mention of Meads' race. [Record No. 47-1]   Therefore, viewing the claim brought before the EEOC and the LFUCHRC's investigation as a whole, Meads did not adequately allege a claim of race

discrimination. Thus, he failed to exhaust the administrative remedies under Title VII and summary judgment is proper regarding that claim.

However, even if Meads had exhausted his administrative remedies, summary judgment would nevertheless be appropriate because the plaintiff has not demonstrated a *prima facie* case of race discrimination under Title VII. To demonstrate a *prima facie* case, a plaintiff must show that: (1) he was a member of a protected class; (2) he was qualified for the position and performed it satisfactorily; (3) he suffered an adverse employment action; and (4) he was replaced by a member outside the protected class or was treated differently than similarly situated non-protected employees. *Logan v. Denny's, Inc.*, 259 F.3d 558, 567 (6th Cir. 2001). If the plaintiff is able to demonstrate a *prima facie* case, the burden shifts to the defendant to show a legitimate, non-discriminatory reason for the actions. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008). Once the defendant has met its burden, the plaintiff must prove that the stated explanation was a pretext for discrimination.[5] *McDonnell Douglas*, 411 U.S. at 804. Meads satisfies the first and third prongs. However, Meads has failed to demonstrate the second prong of the analysis.

To establish that a Title VII plaintiff is qualified for a position, he must demonstrate that he satisfies an employer's objective qualifications. *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 585 (6th Cir. 2009). The proper inquiry is whether the plaintiff is qualified for the

---

[5]    A plaintiff may demonstrate pretext in three ways: "(1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the employer's action; or (3) that they were insufficient to motivate the employer's action." *Chen v. Dow Chemical Co.*, 580 F.3d 394, 400 (6th Cir. 2009).

position independent of the non-discriminatory justification produced by the defense. *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660–61 (6th Cir. 2000).  Under Section 21-14 of the LFUCG Code of Ordinances, an employee must serve a six-month probationary period to demonstrate that he or she can meet the required standards of work prior to being appointed to permanent status.  [Record No. 44-7]  The objective qualifications for Equipment Operator Seniors at the Division of Waste Management include the ability to safely and responsibly operate LFUCG equipment and vehicles and successfully complete safety training.  [Record No. 44-3, p. 2]  Meads was never appointed to permanent status. Instead, the record demonstrates that during training Meads frequently collided with barrels and was unable to adequately complete the training course.  [Record Nos. 44-5, p. 4; 44-6, p. 2, 44-8]  Further, he was unable to progress past the first stage of safety training.  [Record No. 44-4, p. 3]  As a result, Meads never satisfied the objective criteria to be qualified as a permanent Equipment Operator Senior.

Additionally, Meads cannot satisfied the fourth prong in that he cannot show that he was replaced by a member outside the protected class or was treated differently than similarly situated non-protected employees.  Meads alleges that he was replaced by white employee John Burton.  [Record No. 42, p. 9]  However, he has provided the Court with no admissible evidence regarding when John Burton was hired by the LFUCG or whether Burton took Meads' previous job.  Meads further asserts that he was treated differently than similarly situated, non-protected employees Rocky Daliron, John Burton, and Mellissa Bowman.  [*Id.*, p. 10]  He states that they too "had garbage truck accidents while on probation and during training . . . and went back to driving."  [*Id.*]  To demonstrate different

- 8 -

treatment than similarly situated employees, a plaintiff must demonstrate that they are similarly situated in "all relevant respects." *Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 751 (6th Cir. 2012).  The Sixth Circuit has previously stated that "the individuals with whom the plaintiff seeks to compare his treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).  In this case, Meads has not alleged that Daliron, Burton, or Bowman dealt with the same supervisor.  Further, he has not demonstrated that they were subject to the same standards, continually failed to abide by training instructions, or were unable to move past the first stage of training.

Even assuming that Meads could meet his initial burden, he has offered no evidence to rebut the LFUCG's non-discriminatory justification for his termination. Steve Feese, the Director of the Division of Waste Management, indicated that Meads was terminated because of his unwillingness to follow directions during training and the inability to safely operate LFUCG vehicles and equipment.  [Record No. 44-4, p. 3]  Further, Emma Turley, a Safety Coordinator with the Division of Waste Management and Meads' supervisor during training, stated that Meads repeatedly collided with barrels and trash carts during training, failed to follow instructions, and made wrong turns on the training course.  In one instance, Meads backed into a 55-gallon barrel on the training course and, despite Turley's instructions to stop, continued to back into the barrel pushing it out of position.  [Record Nos. 44-5, p. 3; 44-6, p. 2]  These actions resulted in Turley being concerned that the safety of the general

public would be endangered if Meads performed in a similar fashion while operating LFUCG vehicles.  [Record No. 44-5, pp. 3–4]  Turley also states that Meads was disrespectful towards her on multiple occasions and was uncooperative throughout training. [*Id.*]  Meads has provided no admissible evidence establishing that these reasons were pretext.  Instead, he makes numerous allegations of name-calling and disparate treatment based on race which are devoid of any evidentiary support.  Thus, summary judgment in favor of the LFUCG on Meads' claim of race discrimination is proper.

### 2.   Retaliation

LFUCG argues that Meads' retaliation claim is also barred based on his failure to exhaust administrative remedies.  The same administrative remedies described above apply to this claim.  Similar to his race discrimination claim, Meads did not assert a claim of retaliation in his charged filed with the EEOC.  [Record No. 44-2]  Meads alleges that his retaliation claim arises out of his claims of age and sex discrimination which he reported to LFUCG administrators between June 8, 2012 and July 2, 2012.  [Record No. 14, pp. 4–5] He further states that his retaliation claim was correctly asserted in a subpoena request to the Kentucky Division of Unemployment Insurance.  [Record Nos. 42-8, pp. 8–10; 46, pp. 2–5]

Like his claim of race discrimination, Meads failed to exhaust his administrative remedies regarding his retaliation claim.  He did not mark the box asserting a claim of retaliation on his EEOC charge or relate facts that would lead to an investigation of such a claim.  [Record No. 44-2]  Further, the Court rejects Meads' contention that he amended his filing in front of the EEOC to include a claim of retaliation.  Meads points to a subpoena request filed with the Appeals Branch of the Kentucky Division of Unemployment Insurance

- 10 -

as proof of an amendment.  [Record No. 42-8, pp. 8–10]  However, there is no proof that this was ever received by the LFUCHRC or the EEOC.  As stated earlier, the LFUCHRC investigation letter and order of dismissal only referred to Meads' allegations of age, sex, and disability discrimination.  [Record Nos. 12-17, p. 4; 47-1]  There is no indication that Meads' claim of retaliation was ever part of the EEOC charge.  As a result, Meads has failed to exhaust his administrative remedies regarding this claim.

In addition to Meads' failure to exhaust his administrative remedies regarding this claim, it also fails on the merits.  Claims of retaliation are subject to the *McDonnell Douglas* burden shifting analysis described above.  To establish a *prima facie* case of retaliation, a plaintiff must demonstrate that: (1) he engaged in activity protected by Title VII; (2) the defendant was aware of this activity; (3) the defendant thereafter took employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action.  *Laster v. City of Kalamazoo*, 746 F.3d 714, 730–31 (6th Cir. 2014); *Jones v. Johanns*, 264 F. App'x 463, 466 (6th Cir. 2007).  Specifically, "but for" causation between the protected activity and the adverse employment action must be demonstrated.  *Laster*, 746 F.3d at 731.  It is not contested that Meads satisfies the first and third prongs.

Meads asserts that his claim of retaliation stems from protected activity occurring between June 8, 2012 and July 2, 2012, when he reported numerous discriminatory acts by supervisor Emma Turley.  He contends that he first reported acts of discrimination to Kelvin

Jackson during his two-week discussion on June 8, 2012,[6] and that allegations were brought to human resources officer Steve Feese and supervisor Darryl Clay from June 11 through June 13.  [Record No. 42, pp.13–14]  As stated earlier, on June 21, 2012, Meads filed the dual discrimination charge with the LFUCHRC and the EEOC and a harassment claim on June 28, 2012, with the LFUCG's Division of Human Resources.  [Record No. 42-2, pp. 7–14]

Meads has not demonstrated that the defendant was aware of the activity.  Meads contends that he made numerous allegations of discrimination prior to filing his dual charge of discrimination on June 21, 2012.  He first asserts that he reported discriminatory acts to Kelvin Jackson during his two-week examination.  However, a review of the form resulting from the discussion does not include any evidence showing that a claim of discrimination was asserted, nor has Meads provided any evidence to prove that an allegation was made. [Record No. 47-2]  Further, Meads has provided no evidence suggesting that other alleged reports of discrimination made prior to June 21, 2012, occurred.  The decision to terminate Meads was made by Director Steve Feese on June 19, 2012, two days prior to the first protected act.  [Record No. 44-8]  Thus, Meads has failed to demonstrate that a protected act occurred of which the defendant was aware prior to the decision to terminate his employment.

Further, Meads has failed to prove that there was a causal connection between the activity and his employment termination.  Retaliation claims must be proven according to

---

6       Meads alleges that this meeting took place with Kevin Bennett.  However, a review of the discussion form indicates that Kelvin Jackson was the supervisor who met with Meads at this time. [Record No. 42-2, pp. 2–5]

traditional principles of but-for causation. As stated earlier, Meads has supplied no evidence of his alleged reports of discrimination before the filing of his dual discrimination charge on June 21, 2012. Instead, he has provided the Court with hearsay statements alleging that Turley was aware of these reports and unsupported claims that someone in human resources was in Turley's corner allowing her to retaliate against him. [Record No. 42, p. 15] Conversely, LFUCG has submitted evidence demonstrating that Steve Fees made the decision to terminate Meads on June 19, 2012, two days prior to the filing of his dual discrimination claim. [Record No. 44-8] Because Meads has provided no evidence supporting that he had taken any protective activity prior to the decision to terminate him, he is unable to demonstrate a causal connection between the protective activity and his employment termination.

Finally, even if Meads could demonstrate a *prima facie* case of retaliation, LFUCG has articulated legitimate, non-retaliatory reasons for his dismissal. As outlined above, Meads was terminated for failing to follow instructions during training, being disrespectful towards supervisors, being uncooperative during training, and concerns for public safety. Meads has failed to provide any evidence that the reasons for his termination were pretext for retaliation. He instead has submitted unsupported allegations that Turley "caught wind" of his filings of discrimination and started a campaign to get him fired, and that acts of perjury and forgery occurred. [Record No. 42, p. 15] There is no genuine issue of material fact regarding Meads' retaliation claim and that summary judgment is proper for the defendant.

### 3.    Hostile Work Environment

LFUCG again contends that Meads failed to exhaust administrative remedies regarding his hostile work environment claim under Title VII.  Meads' discrimination charge filed with the EEOC did not assert such a claim.  [*See* Record No. 44-2]  Further, Meads does not assert that he amended this charge to include a hostile work environment claim.  He also filed a harassment claim with the LFUCG's Division of Human Resources on June 28, 2012, which did not include such a claim or evidence suggesting a hostile work environment under Title VII.  [Record No. 42-2, p. 9]  And a broad reading of both claims demonstrates that the facts asserted would not have prompted the EEOC to investigate a claim of hostile work environment.   Thus, Meads is precluded from bringing a claim of hostile work environment based on his failure to exhaust administrative remedies.

Further, even if Meads had exhausted his administrative remedies, summary judgment would be appropriate because Meads has not demonstrated a case of hostile work environment.  To establish such a claim under Title VII, a plaintiff must show that: (1) he is a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on race or sex; (4) the harassment created a hostile work environment; and (5) the employer is liable.  *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999).  The alleged actions must "meet both an objective and a subjective test, in other words, the conduct must be so severe or pervasive as to constitute a hostile or abusive working environment both to the reasonable person and the actual victim."   *Grace v. USCAR*, 521 F.3d 655, 678 (6th Cir. 2008).

Meads asserts that he was "pushed, spit on while being yelled at, finger in his face, attacked and embarrassed in front of his classmates" by Emma Turley on the first day of training.  [Record No. 42, pp. 13–14]  He contends that similar harassment continued to occur through his last day of employment, including being called numerous racially insensitive names.  Further, he stated that "thirty times a year dark complexed black employees" brought similar charges against Turley.  [*Id.*, p. 13]  Although Meads contends that name calling and harassment were pervasive throughout his employment, he has alleged only one specific instance of such an occurrence on the first day of training.  Meads' other allegations provide no indication of the time, place, or context of the remarks, and fail to demonstrate that the alleged comments were so frequent to qualify as severe or pervasive.[7]  *See Fuelling v. New Vision Med. Labs LLC*, 284 F. App'x 247, 259–60 (6th Cir. 2008).  Meads also failed to identify evidence that any other employees brought similar charges, let alone "thirty times a year."  In summary, Meads has failed to create a genuine issue of material fact of hostile work environment.

## 4.   Reverse Sex Discrimination

LFUCG asserts that Meads' claim of reverse sex discrimination is time-barred.  [Record No. 44-1, p. 5]  To bring a claim under Title VII, a plaintiff must timely file charges of employment discrimination with the EEOC and file suit within ninety (90) days following receipt of the EEOC's right-to-sue letter.  42 U.S.C. § 2000e-5(e), (f).  There is a rebuttable

---

[7]     Meads requests that the Court read all sworn affidavits and hearing transcripts which cover "all subject and requirement in the laws that govern [his] hostile work environment situation."  [Record No. 48, p. 7]  It is not this Court's duty to search the record or affidavits to find support for Meads' claim.  *See Jones v. Option One Mortg. Corp.*, 466 F. App'x 449, 453 (6th Cir. 2012); *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989).

presumption that an individual receives a right-to-sue letter "on the fifth day following the EEOC's mailing." *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 557 (6th Cir. 2000). Meads included a claim of sex discrimination in his June 21, 2012, charge filed with the EEOC. [Record No. 44-2] The EEOC denied his claim by adopting the findings of the LFUCHRC and mailed a right-to-sue letter to Meads on May 29, 2013. [Record No. 44-3] As a result, the right-to-sue letter is presumed to have been received on June 3, 2013. Meads' original Complaint was filed in the Fayette County Circuit Court on June 27, 2013. [Record No. 1-1, p. 1] He alleged claims of race discrimination, hostile work environment, retaliation, wrongful termination, and illegal conspiracy. [*Id.,* p. 3] It was not until November 1, 2013 (approximately 150 days after receiving the right-to-sue letter), that Meads sought leave to amend his Complaint to add a claim of sex discrimination. [Record No. 14] Thus, Meads' reverse sex discrimination charge is time-barred.

But even if this claim was not time-barred, summary judgment would still be proper because Meads has not demonstrate a *prima facie* case of reverse sex discrimination. This claim is also subject to the *McDonnell Douglas* burden shifting analysis described above. *Arendale*, 519 F.3d at 603. To demonstrate a *prima facie* case of reverse sex discrimination, a plaintiff must show that: (1) background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority; (2) he was qualified for the job; (3) he suffered an adverse employment action; and (4) he was replaced by someone outside of the protected class or was treated differently than other similarly situated employees. *Johnson v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 502 F. App'x 523, 536 (6th Cir. 2012); *Arendale*, 519 F.3d at 603–04.

- 16 -

Meads has failed to satisfy the first element.  The background requirement may be demonstrated by "statistical evidence, employment policies demonstrating a history of unlawful . . . considerations; evidence that the person responsible for the employment decision was a minority [*i.e.*, a woman]; or general evidence of ongoing tension in the workplace."  *Johnson*, 502 F. App'x at 536.  Meads has provided no statistical evidence or employment policies demonstrating a history of unlawful sex considerations, or general evidence of ongoing tension in the workplace.  Further, the supervisor who recommended his dismal was the Director of the Division of Waste Management (Steve Feese), who is a male.  [Record No. 44-4, p. 3]  Thus, Meads cannot establish a *prima facie* case of reverse sex discrimination.

Meads has also failed to demonstrate that he was qualified for the position.  As stated earlier, he did not satisfy the objective qualifications of the job because he was unable to safely operate LFUCG vehicles or complete training to become a permanent employee.  *See* Part I., section A.  Additionally, Meads cannot demonstrate that he was replaced by someone outside of the protected class or was treated differently than other similarly situated employees.  Because Meads contends that he was replaced by John Burton, he has not proven that he was replaced by a female.  Further, Meads has not alleged or provided any evidence that similarly-situated female employees were treated differently.  Instead, he seems to assert that he was treated differently from other male employees because he was not as sexually attractive or sexually permissive.  [Record No. 14, p. 4]  These allegations do not satisfy the fourth prong of the *McDonnell Douglas* analysis.

Finally, even if Meads could demonstrate a *prima facie* case of reverse sex discrimination, LFUCG has asserted legitimate non-discriminatory reasons for his termination and Meads has failed to provide evidence of pretext.  As stated earlier, Meads was terminated for reasons including failing to follow instructions during training, being disrespectful towards his supervisors, and for concern for the public.  Meads has failed to provide any evidence that the reasons for his termination were pretext for discrimination.  Thus, summary judgment in favor of the LFUCG is proper regarding this claim.

### B.   Kentucky Civil Rights Act

Meads' Amended Complaint references the Kentucky Civil Rights Act ("KCRA"), KY. REV. STAT. § 344.010 *et seq.*  [Record No. 14, p. 1]  However, the Amended Complaint makes no effort to establish the nature of the claims asserted under the KCRA or to connect the factual allegations to claims cognizable under the KCRA.  Because "the KCRA is 'similar to Title VII of the 1964 federal Civil Rights Act [it] should be interpreted consistently with federal law.'"  *Spees v. James Marine, Inc.*, 617 F.3d 380, 389 (6th Cir. 2010) (quoting *Ammerman v. Bd. of Ed. of Nicholas Cnty.*, 30 S.W.3d 793, 797–98 (Ky. 2000)).  To the extent Meads asserts claims of race discrimination, retaliation, hostile work environment, and reverse sex discrimination under the KCRA, those claims are analyzed under the same framework as Title VII claims.  Because LFUCG is entitled to summary judgment on those claims, it is likewise entitled to summary judgment on Meads' KCRA claims.

- 18 -

### C.   Other Claims

### 1.   Age Discrimination

Meads asserts a claim of age discrimination in his Amended Complaint.  [Record No. 14]  However, he has not identified a federal vehicle under which the claim can be brought. The Amended Complaint only references Title VII; however, age is not a protected status under Title VII.  *See Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 466 n.4 (1982).  Thus, summary judgment is proper regarding Meads' claim of federal age discrimination.

Further, to the extent that Meads alleges a claim of age discrimination under the KCRA, summary judgment would nonetheless be proper.  Age discrimination claims arising under the KCRA are subject to the same standard as those brought under the American Discrimination and Employment Act.  *See Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 393–94 (6th Cir. 2008).  Such claims are subject to the *McDonell Douglas* burden shifting analysis.  To set out a *prima facie* case of age discrimination, a plaintiff must establish that: (1) he was a member of a protected class (over 40 years of age); (2) he was discharged; (3) he was qualified for the position held; and (4) he was replaced by someone outside of the protected class or was treated differently than similarly situated non-protected employees. *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 317 (6th Cir. 2007).

Meads satisfies the first two prongs of the analysis.  However, as explained above, he has failed to demonstrate that he was qualified for the position of Equipment Operator Senior because he did not satisfy the objective qualifications for permanent employment.  Again, as previously explained, Meads was unable to safely operate LFUCG vehicles or complete training to become a permanent employee.  *See* Part I., section A.

- 19 -

Additionally, Meads is unable to satisfy the fourth prong.  Similar to his race discrimination claim, Meads asserts that he was replaced by John Burton.  [Record No. 42, p. 9]  However, he has provided no evidence regarding John Burton's age.  Further, he has failed to provide admissible evidence regarding the date John Burton was hired or whether he took Meads' previous position.  Meads further asserts that he was treated differently than similarly situated, non-protected employees Rocky Daliron, John Burton, and Mellissa Bowman because they were given a second chance to establish that they could perform assigned job duties but he was not.  [*Id.*]  However, Meads has failed to establish that Daliron, Burton, or Bowman dealt with the same supervisor.  Additionally, he has not provided any admissible evidence demonstrating that the other probationary employees were subject to the same standards, continually failed to abide by training instructions, or were unable to move past the first stage of training.  *See Mitchell*, 964 F.2d at 583.

Finally, even if Meads could demonstrate a *prima facie* case of age discrimination, the LFUCG has asserted legitimate non-discriminatory reasons for his termination.  As outlined above, Meads was terminated for failing to follow instructions during training, being disrespectful towards his supervisors, and for concerns relating to public safety.  Meads has failed to provide any evidence that the reasons for his termination were pretext for age discrimination.  Instead, he simply alleges  without any supporting evidence that his age was the reason for his termination.  Thus, summary judgment in favor of the LFUCG on Meads' claim of age discrimination is proper.

### 2.     42 U.S.C. § 1981

Meads' Amended Complaint references 42 U.S.C § 1981.  [Record No. 14, p. 1]
However, to the extent that he alleges claims under § 1981, those claims fail because 42
U.S.C. § 1983 establishes the lone mechanism for bringing suits against state actors for
alleded violation of rights protected by § 1981.  *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S.
701, 733 (1981) ("[T]he express cause of action for damages created by § 1983 constitutes
the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state
governmental units."); *Arendale*, 519 F.3d at 594–99.  Accordingly, summary judgment is
proper for claims asserted under § 1981.

### D.     Remaining State Law Claims

### 1.     Wrongful Discharge

Meads also seems to assert a wrongful discharge claim under state law.  Under
Kentucky law, an employee has a cause of action for wrongful discharge where the discharge
is contrary to a fundamental and well-defined public policy as evidenced by a constitutional
or statutory provision.  *Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985).  However,
preemption occurs in wrongful discharge cases "when the statutes that establish the 'well-
defined public policy' violation which supports the wrongful discharge pleading are the same
statutes that establish a statutory cause of action for, and structure the remedy for, violations
of that public policy." *Hill v. Ky. Lottery Corp.*, 327 S.W.3d 412, 421 (Ky. 2010).

Meads' KCRA claims preempt his claim of wrongful discharge.  Other than the
KCRA, Meads fails to identify specific constitutional or statutory provisions supporting his
claim.  Thus, because the KCRA contains its own causes of action and remedies, Meads'

wrongful discharge claim will be dismissed.  *Grzyb*, 700 S.W.2d at 401; *Temple v. Pflunger*, 866 F. Supp. 2d 735, 744 (E.D. Ky. 2011).

      **2.    Civil Conspiracy**

      A claim of civil conspiracy under Kentucky law is defined as "a corrupt or unlawful combination or agreement between two or more persons to do by concert of action an unlawful act, or to do a lawful act by unlawful means."  *Smith v. Bd. of Educ. of Ludlow*, 94 S.W.2d 321, 325 (Ky. 1936).  "Civil conspiracy is not a free-standing claim; rather, it merely provides a theory under which a plaintiff may recover from multiple defendants for an underlying tort."  *Stonestreet Farm, LLC v. Buckram Oak Holdings, N.V.*, Nos. 2008-CA-002389, 2009-CA-000026, 2010 WL 2696278, at *13 (Ky. Ct. App. July 9, 2010).  The plaintiff does not identify the underlying tort which forms the basis for this claim.  However, because the plaintiff's stated claims fail, his claim for civil conspiracy also fails.  *See Walker v. Carter Cnty., Ky.*, No. 0: 09-CV-25-DLB, 2011 WL 845780, at *6 (E.D. Ky. Feb. 15, 2011).

## IV.

      Meads has not presented evidence to create a genuine issue of material fact regarding any of his alleged claims resulting from his employment termination.  As a result, summary judgment is appropriate.  Accordingly, it is hereby

      **ORDERED** as follows:

      1.    Defendant Lexington-Fayette Urban County Government's motion for summary judgment [Record No. 44] is **GRANTED**.

     2.      Plaintiff Willie R. Meads' motion for summary judgment [Record No. 42] is **DENIED**.

     3.      All claims having been resolved, this action is **DISMISSED** and **STRICKEN** from the Court's docket.

     4.      A final and appealable Judgment shall be entered this date.

This 9th day of March, 2015.

Signed By:

*Danny C. Reeves* DCR

**United States District Judge**

- 23 -