UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| WILLIE R. MEADS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 13-228-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| LEXINGTON-FAYETTE URBAN | ) | **MEMORANDUM OPINION** |
| COUNTY GOVERNMENT, | ) | **AND ORDER** |
| | ) | |
| Defendant. | | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendant Lexington-Fayette Urban County Government's ("LFUCG") Motion *in Limine* to exclude certain evidence at trial. [Record No. 70] The defendant has also raised several objections to the plaintiff's proposed witness and exhibit lists. The parties stated their respective positions regarding the defendant's motion and objections during the pretrial conference held August 17, 2016.

## I.   The Motion in Limine

Meads has asked that an instruction on punitive damages be given to the jury. [Record No. 63, p. 4] However, the only claims that remain in this action are for race discrimination and retaliation under the Kentucky Civil Rights Act, KRS Chapter 344. Under Kentucky law, punitive damages are not available for violations of the KCRA. *See Ky. Dep't of Corr. v. McCullough*, 123 S.W.3d 130, 138 (Ky. 2003). Likewise, Meads, who is proceeding in this action *pro se*, may not recover attorney's fees. Although it does not appear that this issue has been addressed in the context of the KCRA, the United States Supreme Court has held that an attorney who represents himself in a successful federal civil rights action is not entitled to

attorney's fees under 42 U.S.C. § 1988. *Kay v. Ehrler*, 499 U.S. 432, 437–38 (1991); *see also Wright v. Crowell*, 674 F.2d 521, 522 (6th Cir. 1982). The KCRA is to be interpreted consistently with federal law, and there is no authority supporting Meads' request for attorney's fees.

Meads also asks the Court to instruct the jury regarding emotional damages including embarrassment and humiliation. [Record No. 63, p. 3] He requests a separate "emotional distress" instruction regarding his wife's illness, which coincided with his termination of his employment. *Id.* It appears that Meads seeks damages based on his wife's alleged emotional harm as a result of the termination. *Id.* LFUCG has moved to exclude any evidence regarding these claims, arguing that Meads did not plead a claim for emotional distress. [Record No. 70, p. 3]

A "plaintiff may obtain relief on an unpleaded theory of recovery only if he proves that theory, he bases it on the wrongful act alleged in the complaint, and the defendant receives fair notice of the theory." *Yoder v. Univ. of Louisville*, 417 F. App'x 529, 530 (6th Cir. 2011). LFUCG contends that it did not receive fair notice of Meads' claim of emotional harm. While Meads made no reference to emotional damages in his Amended Complaint, he described the defendant's actions as "willful, wanton, deliberate, reckless, malicious, and/or grossly negligent in nature," as well as seeking punitive damages. *See Parr v. Central Soya Co., Inc.*, 732 F. Supp. 738, 740–41 (E.D. Mich. 1990) (although plaintiff did not claim emotional distress in his complaint, notice was imputed to defendant by virtue of plaintiff's claim for exemplary damages).

Generally, termination alone, even if based on discrimination does not give rise to a claim for emotional distress. *See Benningfield v. Pettit Environ, Inc.*, 183 S.W.3d 567, 572

(Ky. Ct. App. 2005) (citing *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 376 (6th Cir. 1999)). Under the KCRA, however, plaintiffs are not necessarily required to demonstrate "severe or serious emotional injury." *Kentucky Comm'n of Human Rights v. Fraser*, 625 S.W.2d 852, 856 (Ky. 1981). Further, plaintiffs are not required to present expert testimony. *See Smith v. Walle Corp.*, 5:13-219-DCR, 2014 WL 5780959, at *5 (E.D. Ky. Nov. 5, 2014). *See also Turic v. Holland Hosp., Inc.*, 85 F.3d 1211, 1215 (6th Cir. 1996). Accordingly, Meads will be permitted to testify regarding his own emotional harm and the defendant will have a full opportunity for cross-examination on the subject.

## II. The Defendant's Objections

LFUCG contends that Meads has identified numerous potential witnesses who were not previously named in his Rule 26 disclosures or in subsequent discovery responses. [Record Nos. 69, 75] These individuals are identified as: Rick Panders, Danny Moore, Jane Davis, Antwon Bennett, Melissa Bowman, Rodriguez Henry, Anthony Sullivan, Thomas Haggerd, Troy Dansdy, N. Mims, John Taylor, Manwell Benton, Rhonda Snow, Emma Meads, Dr. Arvinda Padmanabhan, John Cornell, and Denise Cunningham. [Record No. 69 at p. 2 and Record No. 75 at p. 2] Generally, a party's failure to disclose the identity of a witness to be called at trial pursuant to Rule 26(a) results in the exclusion of that individual's testimony. *See* Fed. R. Civ. P. 37(c)(1). *See also Taylor v. Thomas*, 624 F. App'x 322, 329 (6th Cir. 2015). Meads has provided no explanation why he did not comply with Rule 26. Therefore, the testimony of these individuals will be excluded.

On July 28, 2016, Meads filed an update [Record No. 64], indicating that he wished to remove the following individuals from his proposed witness list: Vanessa Sandford, Ethel Harmon, Steve Wilborn, Ray Crider, Jon Ackerson, Arnathan Clark, and Gabrielle Wright.

Accordingly, LFUCG did not make objections with respect to those individuals. [Record No. 69, p. 1] On August 11, 2016, Meads filed an amended witness list, indicating that he again intended to introduce the testimony of Vanessa Sandford and Steve Wilborn. [Record No. 72, p. 1] LFUCG argues that Meads should be precluded from calling Sanford and Wilborn to testify because they were identified after the time allowed by the Court's Scheduling Order. While Meads identified these individuals in his original witness list filed on July 28, 2014, he withdrew both witnesses from the list before LFUCG's time to file objections had run. Accordingly, LFUCG had no reason to make objections, as there was no indication these individuals would testify. Further, LFUCG had no opportunity to prepare for the testimony of these witnesses. Accordingly, Sandford's and Wilborn's testimony will be excluded based on the potential prejudice to the defendant.

LFUCG also objects to three witnesses who Meads claims were hired by the LFUCG Division of Waste Management around the same time that he was hired: Antwon Bennett, Rocky Daliron, and John Burton. This issue was raised during the pretrial conference and Meads acknowledged that he does not have contact information for these individuals. Further, he may have spelled their names incorrectly when identifying them. Counsel for LFUCG agreed to have Division of Waste Management records searched for any individuals hired around the same date as the plaintiff. The search produced the following results: Lesa Spillman; Antwan Benton; Tamoy Carter;[1] and Radi Dahnon. [Record No. 78] Prior to its identification of these individuals, LFUCG argued that Meads should not be permitted to call

---

[1] In support of his motion for summary judgment, Meads submitted the affidavit of an individual named "Tamory Carter" who worked with him at LFUCG Division of Waste Management. The Court assumes this is the same individual and will use the spelling provided in the affidavit.

any of the proposed individuals because they "do not exist as they have [not] been identified." [Record No. 69, p. 2] The Court concludes, however, based on LFUCG's seemingly simple search of its records, that it could have identified the witness as Antwan Bennett with little effort. Further, LFUCG will have a full opportunity to cross-examine the witness and there is little risk of prejudice resulting from Meads' misidentification of Benton. Because, however, LFUCG records do not reveal any individuals identified as Rocky Daliron or John Burton, these witnesses will be excluded.

Additionally, the defendant objects to the proposed witnesses who would testify regarding administrative collateral proceedings, specifically N. Mims and Timothy Burnett. [Record No. 69, p. 3] Meads applied for unemployment compensation following termination by LFUCG. N. Mims was the hearing referee who conducted the hearing and issued a favorable decision, which was later overturned. Burnett, Meads' co-worker, served as a witness during the unemployment hearing.

Neither Mims nor Burnett will be permitted to testify regarding the unemployment hearing. Claims for unemployment compensation are vastly different than civil claims of discrimination and are adjudicated under different standards. The jury will be presented with the relevant evidence and will make an independent determination regarding the defendant's motive for terminating Meads—the hearing officer's opinion will not aid the jury in making this determination. *See Pascual v. Anchor Advances Prods., Inc.*, 117 F.3d 1421 (6th Cir. 1997) (table) ("an unemployment hearing officer's decision, though it may be admitted in a federal discrimination suit, normally should not be.") (citation omitted). The plaintiff may

utilize testimony given during the unemployment hearing for impeachment purposes, if otherwise appropriate.[2]

Meads also wishes to introduce the testimony of witnesses John Cornell and Denise Cunningham, who were supervisors at Toyota Manufacturing in Georgetown, Kentucky. [Record No. 72, pp. 1–2] It appears that these individuals would testify regarding Meads' previous termination from his employment with Toyota. *Id.* Meads acknowledged during the pretrial conference that he brought a discrimination action against Toyota several years ago and that the action ended with a court determination unfavorable to him. *See Meads v. Toyota Motor Mfg. Ky., Inc.*, No. 2004-CA-305-MR, 2005 WL 499812, (Ky. Ct. App. March 4, 2005). Meads may not attempt to relitigate his dispute with Toyota during the trial of this matter.[3] Further, the issue has limited relevance to this case and would result in confusion to the jury and a waste of time. *See* Fed. R. Evid. 403.

This same rationale applies to any testimony regarding Meads' termination from LexTran. Meads sued his former employer (LexTran) in 2009, alleging race discrimination. *Meads v. Transit Auth. Of Lexington-Fayette Urban County Gov't*, No. 09-279-KSF, 2010 WL 3168093 (E.D. Ky. Aug. 10, 2010). Summary judgment was granted in favor of the defendant and Meads' complaint was dismissed, with prejudice. *Id.* at *4. Accordingly, Meads may not

---

[2] During the Pretrial Conference, the plaintiff indicated that he anticipates using portions of a video recording of his unemployment compensation hearing for impeachment purposes.

[3] Meads may not introduce an "old union document" which goes into "great detail as to [Meads'] efforts to organize [Toyota]" [Record No 72, p. 3] for the reasons stated herein.

present any testimony or documentary evidence regarding the circumstances of his termination from employment with LexTran, as it is not probative of the issues in this action.[4]

The defendant also objects to the following witnesses, arguing that they are expected to testify regarding their subjective beliefs about Meads' employment, his work ability, and unsubstantiated incidents. [Record No. 69, p. 4] These witnesses are: Brandon Scott, Willetta Cowan, Timothy Burnett, Philip Alcorn, Rodriguez Henry, Tamory Carter, Anthony Sullivan, Thomas Haggerd, Theresa Sanders, Troy Dansdy, Jeffrey Jones, John Taylor, Manwell Benton, and Rhonda Snow.[5] *Id.* The defendant contends that none of these individuals played a meaningful role in the decision-making process at issue and, with the exception of Jeffery Jones and Tamory Carter, none of the individuals were present during the events that allegedly led to Meads' termination.

As an initial matter, these individuals will not permitted to testify concerning their personal beliefs regarding the defendant's reasons for terminating Meads' employment. See Fed. R. Evid. 701. The ultimate issue of whether Meads was a victim of discrimination or retaliation is a determination reserved for the jury. *See United States v. Canipe*, 569 F.3d 597, 603 (6th Cir. 2009) (lay witness's legal conclusion was "incompetent and unpersuasive"). However, witnesses may generally testify regarding what they saw and heard, if the testimony tends to make any material fact more or less probable than it would be without the testimony. Fed. R. Evid. 401. Even relevant evidence may be excluded, however, if its probative value

---

[4] Plaintiff's proposed Exhibit 30 will be excluded.

[5] The following individuals may not testify because Meads failed to disclose the identity of the witnesses prior to the close of discovery, as discussed previously: Rodriguez Henry, Thomas Haggerd, Theresa Sanders, Troy Dansdy, John Taylor, Manwell Benton, Rhonda Snow, Aranthan Clark, and Gabrielle Wright.

is substantially outweighed its tendency to confuse the issues, cause undue delay, waste time, or needlessly present cumulative evidence. Fed. R. Evid. 403.

Meads provided the affidavits of several of his proposed witnesses in support of his motion for summary judgment. Timothy Burnett and Phillip Alcorn were co-workers of Meads' at the Division of Waste Management. They are anticipated to testify that Meads' supervisor, Emma Turley, announced that she had Meads fired based, in part, on his race. [Record No. 42-11, p. 2; 42-12, p. 3; 42-18, p. 2] Burnett would also testify that Meads was replaced by a white employee, John Burton. *Id.* at p. 3. Burnett and Alcorn will be permitted to testify only with respect to what they saw and heard concerning Meads' employment and termination with LFUCG Division of Waste Management.

Tamory Carter provided an affidavit in which he stated that he worked alongside Meads during Meads' training period with LFUCG. [Record No. 42-16, p. 1] Carter provided his observations of Meads' training, including his belief that Turley treated black employees, including Meads, worse than similarly-situated white employees. Further, Carter stated that Turley made racial comments about Meads and that he was replaced by a white employee. Carter is expected to testify that a June 6, 2016 LFUCG document is forged, but it does not appear that Carter has personal knowledge regarding the alleged forgery of the document. Carter may testify regarding relevant, non-cumulative matters within his personal knowledge. Speculation will not be permitted, however.

Meads also submitted the affidavit of Jeffery Jones in support of his motion for summary judgment. [Record No. 42-41] Jones works for the LFUCG Division of Solid Waste as a Senior Operator and Instructor and Trainer of Vehicle Operations. *Id.* at p. 1. Jones will not be permitted to testify regarding the alleged "problems and issues" with LFUCG that

occurred "long before Meads ever became an employee," because such testimony is not probative with respect to Meads' claims. Jones, who apparently was present during Meads' training and an alleged confrontation with Turley, will be permitted to testify regarding what he saw and heard during these events. He may also testify, based on his experience in 18 years of employment with the Division of Solid Waste, regarding how Meads was treated differently than other similarly-situated individuals.

Meads has indicated that he intends to call Brandon Scott and Willetta Cowan, two LFUCG employees who worked on the same truck as him. [Record No. 61, p. 3] These witnesses would testify regarding Meads' "work ability, how he worked with others, how he followed instructions, and what they felt about him as an individual." *Id.* To the extent this proposed testimony is probative (i.e., attempting to establish pretext), it appears to be cumulative of the anticipated testimony of Jones, Carter, Burnett, and Alcorn. Accordingly, unless Meads can establish a unique need for the testimony of these particular witnesses, their testimony will be excluded.

Meads has not identified any proposed testimony of Anthony Sullivan that would be admissible at trial. As a result, his testimony will be excluded. Sullivan provided an affidavit, which Meads filed in support of his motion for summary judgment. [Record No. 42-17] According to the affidavit, Sullivan believes there is a history of racial discrimination at the LFUCG Division of Waste Management. It appears that these beliefs are based on speculation inasmuch as Sullivan did not provide specific facts based on personal knowledge. He did state that Meads attempted to file an age discrimination claim in his presence, but age discrimination is not at issue here. Further, Sullivan's testimony that Meads was replaced by a white employee is cumulative.

Meads will not be permitted to present evidence at trial regarding the medical or emotional conditions of wife, Emma Meads. As previously stated, neither Emma Meads nor Dr. Padmanabhan were identified prior to the close of discovery and may not be called as witnesses. *See* Fed. R. Civ. P. 37(c)(1). Further, the issue of Mrs. Meads' condition is not relevant to the discrimination claims against the defendant. Because Meads did not even allude to such harm in his pleadings, he will not be permitted to testify regarding Mrs. Meads' conditions.

LFUCG objects to a host of Meads' proposed exhibits because they have been modified with (presumably Meads') handwriting.[6] LFUCG properly characterizes these additions as "modifications to add testimonial evidence." Each group of exhibits also includes an introductory page with testimonial evidence in which Meads attempts to interpret the exhibits for the jury. As discussed during the pretrial conference, the handwritten additions to the exhibits are improper. *See* Fed. R. Evid. 901.

Should Meads wish to introduce a clean copy of these particular exhibits during trial, without the introductory pages, he may seek to introduce them at that time. As the Court has explained, however, evidence from collateral proceedings, such as Meads' unemployment proceeding are not probative with respective to the defendant's alleged discrimination and retaliation. Accordingly, the documents he wishes to introduce, such as Exhibits 3C through 3E, unemployment documents completed by Ashley Case, would only be admissible to impeach Case should she testify inconsistently with the statements she made in the forms.

---

[6] These are numbered in the record as 2A, 2D, 2E, 3C, 3E, 3F, 4B, 4C, 4D, 5B, 7A, 7B, and 7C.

The defendant also objects to the introduction of the plaintiff's proposed Exhibit 3B, which is a response prepared by LFUCG's counsel to a request for information by the Lexington-Fayette Urban County Human Rights Commission as part of their investigation into Meads' charge of discrimination. Meads has not identified a witness who would be able to authenticate or provide testimony regarding this document. Further, this document is related to Meads' unemployment claim. As discussed previously, it may not be introduced as direct evidence in this case. Unlike statements made during Meads' unemployment hearing, this document may not be used for impeachment purposes, as it is a response to a request for information completed by counsel. There is also no apparent admissible purpose for Exhibit 3F, the order reversing the unemployment claims referee decision. [Record No. 61-3, p. 15] As the Court has explained, evidence of the collateral proceedings would not be helpful to the jury and would likely confuse the issues. *See* Fed. Rule Evid. 403.

Based on the foregoing analysis, it is hereby

**ORDERED** that the defendant's motion *in limine* [Record No. 70] is **GRANTED**, in part, and **DENIED**, in part.

This 31st day of August, 2016.

Signed By:
*Danny C. Reeves* DCR
United States District Judge